| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER, COLORADO<br>1437 Bannock, Denver, Colorado 80202 | DATE FILED: December 7, 2017 8:44 AM<br>FILING ID: 41969B8F72706<br>CASE NUMBER: 2017CV34531 |
| Plaintiff:   HANNAH FREDERICK, an individual<br><br>Defendant:  MURPHY COMPANY MECHANICAL CONTRACTORS AND ENGINEERS,<br>a Missouri Corporation | |
| | ▲   COURT USE ONLY   ▲ |
| **Attorney for Plaintiff:**<br>Sean M. McCurdy, #25427<br>McCurdy & Eichstadt, P.C.<br>9085 E. Mineral Circle, Suite 380<br>Centennial, CO 80112-3462<br>Phone:  (303) 832-8870<br>Fax: (303) 832-8871<br>E-mail: mccurdy@mccurdy-eichstadt.com | Case Number:<br><br>Ctrm: |
| **PLAINTIFF'S COMPLAINT AND JURY DEMAND** | |

**COMES NOW,** Hannah Frederick ("Miss Frederick"), by and through her attorney, Sean M. McCurdy of McCurdy & Eichstadt, P.C., and hereby submits *Plaintiff's Complaint and Jury Demand* against MURPHY COMPANY MECHANICAL CONTRACTORS AND ENGINEERS ("Murphy") as follows:

## INTRODUCTION

1.     Miss Frederick alleges common law tort claims and damages against Murphy for assault, battery, and false imprisonment based on the sexual harassment of Miss Frederick during her employment at Murphy.

2.     Miss Frederick's sexual harassment, gender discrimination, and retaliation claims against Murphy under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.,* as amended ("Title VII"), related to her employment and termination at Murphy, are currently under investigation by the U.S. Equal Employment Opportunity Commission ("EEOC").

Exhibit 1

3.     Miss Frederick was repeatedly assaulted at Murphy, repeatedly battered at Murphy, falsely imprisoned at Murphy, sexually harassed, discriminated against based upon her gender, and discharged from her employment by Murphy in retaliation for complaining about sexual harassment and abuse at Murphy.

4.     Miss Frederick has been adversely affected by tortious conduct and unlawful employment practices taken against her by Murphy on the basis of her sex/gender (female), and in retaliation for her participation in activities protected and opposition to employment practices made unlawful by Title VII.  These unlawful employment practices include the maintenance of a severe, pervasive, and hostile work environment because of her sex/gender (female), discriminatory terms and conditions of employment because of her sex/gender (female), repeated physical and emotional abuse, retaliation and discharge.  As redress for the damages she has suffered, and in the future will suffer, Miss Frederick seeks legal and equitable remedies sufficient to make her whole, as more fully set forth below.

## JURISDICTION AND VENUE

5.     Jurisdiction is proper in this Court on Miss Frederick's common law tort claims and damages pursuant to the Colorado Constitution, Article VI, § 9, and the amount in controversy meets the jurisdictional limits of this Court.

6.     Venue is proper in this Court pursuant to Rule 98 of the Colorado Rules of Civil Procedure because Murphy's principle place of business in Colorado is in the City and County of Denver, Colorado, and actions forming the basis of Miss Frederick's claims occurred in the City and County of Denver, Colorado. Murphy maintains offices and regularly conducts business in the City and County of Denver and State of Colorado.

**PARTIES**

7.     The named Defendant, MURPHY COMPANY MECHANICAL CONTRACTORS AND ENGINEERS, is a Missouri corporation regularly doing business from 3790 Wheeling Street, Denver, Colorado.

8.     Defendant Murphy is a corporation that, during Miss Frederick's employment and continuing thereafter, has continuously been doing business in the State of Colorado, and has continuously had in excess of 15 employees in Colorado.  And at the time of Miss Frederick's separation from employment with Murphy on or about January 20, 2017, Murphy employed over 500 employees on its payroll in each of twenty (20) or more calendar weeks in the preceding calendar year.

9.     During Miss Frederick's employment and continuing thereafter, Murphy was an interstate mechanical contractor, and as such, was an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e (b), (g) and (h).

10.     During Miss Frederick's employment, Murphy was her "employer", within the meaning of Section 701 of Title VII, 42 U.S.C. § 2000e(b).

11.     During Miss Frederick's employment at Murphy, she was an "employee" of Murphy within the meaning of Section 701 of Title VII, 42 U.S.C. § 2000e(f).

12.     Miss Frederick is an adult, female, resident of the State of Colorado, within the jurisdiction of Colorado and the United States, and thus is entitled to the rights and privileges protected by Title VII and the laws of the State of Colorado.

## ADMINISTRATIVE PROCEEDINGS

13.     On May 1, 2017, Miss Frederick filed with the EEOC a charge of discrimination, Charge No. 541-2017-01342 (the "Charge"), against Murphy for sex/gender discrimination (hostile work environment and unlawful terms/conditions) and retaliation in violation of Title VII.

14.     After more than 180 days following the filing of Miss Frederick's Charge and the expiration of the EEOC's exclusive jurisdiction, on October 30, 2017, Miss Frederick requested a Notice of Right to Sue ("NRTS") from the EEOC.  On November 7, 2017, related to the Title VII Charge, the EEOC denied Miss Frederick's request for a NRTS.

15.     Miss Frederick has complied with all conditions precedent to the filing of this action and has timely filed this action within all applicable statutes of limitations deadlines.

## GENERAL ALLEGATIONS

16.     Miss Frederick began her employment with Murphy on September 3, 2016, when she was 25 years old, as a member of the Plumbers Local Union No. 3 (the 'Union").

17.      The "Collective Bargaining Agreement" ("CBA") between the Union and Murphy, made and entered into as of June 1, 2016, does not expressly waive any of Miss Frederick's statutory or tort claims, and does not clearly and unmistakably require Miss Frederick to arbitrate her statutory or tort claims, and as such, no waiver of Miss Frederick's right to litigate her statutory and tort claims against Murphy in a judicial forum has occurred (although the CBA provides that Miss Frederick may resort to the arbitral forum to enforce her contractual rights under the CBA).

18.     During her entire employment with Murphy, Miss Frederick held the position of

First-Year Plumber's Apprentice, and Miss Frederick's primary duty at Murphy in her position was to assist the Plumber Foremen at Murphy.

19.     Throughout her employment with Murphy, Miss Frederick was based at Murphy's office facility located at 3790 Wheeling Street, Denver, Colorado, or at Murphy's fabrication facility in Colorado (the "Fab Shop"), although Miss Frederick was directed by Murphy to perform work for Murphy at various locations in Colorado.

20.     When Miss Frederick began working for Murphy in early September 2016, she was assigned to work under the direct supervision of Murphy's Plumber Foreman, Michael Najera ("Mr. Najera").

21.     Mr. Najera is an adult male, and he was an employee of Murphy from at least September 2, 2016 through January 21, 2017, during which time Murphy had control or the right to control Mr. Najera, including the right to terminate Mr. Najera's employment relationship with Murphy.

22.     From September 3, 2016 to December 12, 2016, Murphy provided Mr. Najera with supervisory or managerial authority over Miss Frederick, to fire or discipline her at Murphy, and otherwise empowered Mr. Najera to take tangible employment actions against Miss Frederick at Murphy.

23.     From September 3, 2016 to December 12, 2016, Murphy provided Mr. Najera with supervisory or managerial authority to participate in or recommend discipline for Miss Frederick, or to participate in or recommend her termination at Murphy.

24.     From September 3, 2016 to December 12, 2016, Mr. Najera consistently directed Miss Frederick's work and gave her job assignments at Murphy.

25.     From September 3, 2016 to December 12, 2016, Mr. Najera used his

independent judgment to instruct Miss Frederick in her work for Murphy.

26.     From September 3, 2016 to December 12, 2016, Miss Frederick would have worked largely unsupervised at Murphy if Mr. Najera did not direct her work at Murphy.

27.     From September 3, 2016 to December 12, 2016, Mr. Najera supervised all aspects of the work assignments given to Miss Frederick at Murphy.

28.     From September 3, 2016 to December 12, 2016, Mr. Najera controlled all aspects of Miss Frederick's day-to-day work-related activities at Murphy.

29.     From September 3, 2016 to December 12, 2016, Mr. Najera approved (or disapproved) Miss Frederick's work at Murphy.

30.     At Murphy, Miss Frederick earned approximately $23,000 annual gross base wages as a non-exempt employee, plus approximately $17,000 annually in employer contributions to health/medical benefits, for a total gross compensation package totaling approximately $40,000 annually.

31.     Miss Frederick's compensation package at Murphy remained unchanged from the start of her employment until her termination at Murphy.

32.     During Miss Frederick's entire term of employment at Murphy, she never received a single written warning or documented disciplinary event for any behavioral deficiency or any substandard work performance.

33.     During Miss Frederick's entire term of employment at Murphy, she had no problems with her behavior, performance or attendance at Murphy, and she was a good employee at Murphy.

## 1st Event

34.     Approximately the end of October 2016, Miss Frederick was working with Mr.
Najera for Murphy, and after completing an assignment for Indivior in or around Ft.
Collins, Colorado, they traveled for Murphy to another jobsite in or around Windsor,
Colorado, to replace a sink in a one-story commercial building.

35.     On this occasion, while walking toward the jobsite building in or around Windsor,
Colorado, in the parking lot bay, without provocation or invitation, Mr. Najera repeatedly
and forcefully slapped Miss Frederick on her buttocks and said to her, "you like that"
(hereinafter referred to as the "1st Event").

36.     Miss Frederick immediately responded to the 1st Event and sternly objected,
saying to Mr. Najera, "cut it out".

37.     Miss Frederick never informed or suggested to Mr. Najera in any manner that the
1st Event was welcomed by her.

38.     Miss Frederick appeared obviously offended by the 1st Event.

39.     Following the 1st Event at Murphy, Miss Frederick's working relationship with Mr.
Najera at Murphy became obviously awkward and uncomfortable for Miss Frederick.

40.     In the evening following the 1st Event at Murphy, Miss Frederick informed both
her boyfriend and her mother about the 1st Event at Murphy.

41.     In the evening following the 1st Event at Murphy, at an auto parts store, Miss
Frederick told her boyfriend, Ryan Tripp, that Mr. Najera had slapped her "on the ass"
that day at Murphy, it bothered her that Mr. Najera thought she was his "play-thing" at
Murphy, and it placed her in an extremely awkward position at Murphy.

42.     In response, Ryan Tripp agreed with Miss Frederick and responded "that sucks",

and he recommended that she speak directly with Mr. Najera about the 1st Event at Murphy.

43.    In the evening following the 1st Event, at Miss Frederick's residence, she spoke with her mother, Heather Shreve ("Ms. Shreve"), about the 1st Event at Murphy.

44.    In response, Ms. Shreve told Miss Frederick that she should speak with Mr. Najera about the 1st Event at Murphy and let him know it was disrespectful and unacceptable.

45.    Ms. Shreve is a Journeyman Plumber with approximately 15 years' experience in the plumbing industry.

## 2nd Event

46.    A couple days later, approximately late October or early November 2016, while working for Murphy at a jobsite in or around Boulder, Colorado, Mr. Najera placed both of his hands on Miss Frederick's neck and began to massage her without her permission or consent (hereinafter referred to as the "2nd Event").

47.    Miss Frederick immediately responded to the 2nd Event by physically removing Mr. Najera's hands from her neck.

48.    Miss Frederick immediately and sternly objected to the 2nd Event at Murphy, saying to Mr. Najera, "stop … you need to start keeping your hands to yourself … it is disrespectful, and I'm not your play-thing at work."

49.    Miss Frederick never informed or suggested to Mr. Najera in any manner that the 2nd Event at Murphy was welcomed by her.

50.    Miss Frederick appeared obviously offended by the 2nd Event at Murphy.

51.    Following the 2nd Event at Murphy, approximately the end of October or early

November 2016, Miss Frederick's working relationship with Mr. Najera at Murphy

became obviously and increasingly awkward and uncomfortable for Miss Frederick.

52.     Immediately following Ms. Frederick's objection to Mr. Najera regarding the 2nd

Event at Murphy, Mr. Najera responded, "you're right … it was uncalled for, and I'll stop

it.  It won't happen again."

53.     In the evening following the 2nd Event at Murphy, at Miss Frederick's residence,

Miss Frederick informed her mother, Ms. Shreve, that she had personally confronted

Mr. Najera at Murphy that day regarding him touching her against her will and Mr.

Najera had agreed not to do it again.

### 3rd Event

54.     Approximately a couple weeks later, around the middle of November 2016, at

Indivior in or around Ft. Collins, Colorado, Miss Frederick worked for Murphy with Mr.

Najera, Tyler McHam (Murphy Journeyman Plumber), and Mario (last name unknown)

(First-Year Apprentice Plumber at Murphy).

55.     While working for Murphy on this occasion, without provocation or invitation, Mr.

Najera forcefully slapped Miss Frederick on her buttocks (hereinafter referred to as the

"3rd Event").

56.     Miss Frederick never informed or suggested to Mr. Najera in any manner that the

3rd Event was welcomed by her.

57.     Miss Frederick appeared obviously offended and humiliated by the 3rd Event.

58.     Tyler McHam and Mario (last name unknown) observed the 3rd Event.

59.     Immediately following the 3rd Event at Murphy, Miss Frederick appeared

obviously flushed and embarrassed, and she walked away from Mr. Najera and her

other co-workers, Tyler McHam and Mario (last name unknown).

60.     Later that day, while working together alone inside a building for Murphy, Miss Frederick confronted and complained to Mr. Najera directly saying, "you smacking me on the ass again right there in front of Tyler and Mario makes it look like I'm fucking my Foreman, and you are jeopardizing my career here … so stop it!"

61.     In response, Mr. Najera promised that he would not touch Miss Frederick again.

62.     Following the 3rd Event at Murphy, around the middle of November 2016, Miss Frederick's working relationship with Mr. Najera at Murphy became obviously and increasingly awkward and uncomfortable for Miss Frederick.

## 4th Event

63.     On several occasions while employed by Murphy, Miss Frederick worked with Murphy's Plumber Journeyman, Sal Guerrero ("Mr. Guerrero"), under the supervision of Mr. Najera.

64.     Mr. Guerrero is an adult male, and he was an employee of Murphy from at least September 2, 2016 through January 21, 2017.

65.     On Thursday, December 8, 2016, Miss Frederick worked for Murphy along with Mr. Najera and Mr. Guerrero in or around Denver, Colorado, on a renovation project for Tri-County.

66.     In the morning that day, while working for Murphy inside a building, Mr. Najera told Miss Frederick to go outdoors with him so he could show her how to turn-off the water to the building.

67.     Without informing Miss Frederick, Mr. Najera told Mr. Guerrero to record Miss Frederick and Mr. Najera when they are outside the building.

68.     On December 8, 2016, Mr. Guerrero recorded (audio and video) Mr. Najera and Miss Frederick on his phone (along with audio recording his own voice) while the three of them were working for Murphy.  (The recording is hereinafter referred to as the "video", it is incorporated herein by reference, and it is included herewith as Plaintiff's Exhibit "1").

69.     On December 8, 2016, while working for Murphy outdoors, Mr. Najera directed Miss Frederick to kneel in the snow and shut-off a water valve, and Mr. Najera knelt directly beside and over Miss Frederick as she did so.

70.     As she did so, Miss Frederick protested and complained to Mr. Najera that he was standing over her just to fuck with her.

71.     On December 8, 2016, while working for Murphy, Mr. Najera threatened Miss Frederick, saying that she better stop talking-back to her Foreman and he is tired of her shit.

72.     On December 8, 2016, while working for Murphy, Mr. Najera forcefully slapped Miss Frederick on her buttocks (hereinafter referred to as the "4th Event").

73.     Miss Frederick did not invite or consent to the 4th Event.

74.     Miss Frederick never informed or suggested to Mr. Najera in any manner that the 4th Event was welcomed by her.

75.     Miss Frederick appeared obviously offended by the 4th Event at Murphy.

76.     Immediately following the 4th Event, Miss Frederick screamed at Mr. Najera, "stop it!"

77.     Following the 4th Event, Mr. Guerrero exclaimed, "oh shit!"

## 5th Event

78.    Approximately one minute after the 4th Event, Miss Frederick told Mr. Najera that she is stressed-out because he is up her ass.

79.    In response, while working for Murphy, Mr. Najera threatened Miss Frederick saying, "you know what… that did it… I'm about to bitch-slap you."

80.    Mr. Guerrero then laughed and said, "don't take that shit, Hannah… take him down".

81.    On December 8, 2016, while working for Murphy outdoors, Mr. Najera placed both of his hands on Miss Frederick, grabbing the coat covering her right shoulder and the jeans covering her left knee.

82.    On December 8, 2016, while working for Murphy, Mr. Najera grabbed and pushed Miss Frederick with both of his hands, without her consent, causing Miss Frederick to fall down backwards onto her back in the snow and rocks, and he kept her on the ground on her back, and stood over her for several seconds (hereinafter referred to as the "5th Event").

83.    Miss Frederick never informed or suggested to Mr. Najera in any manner that the 5th Event was welcomed by her.

84.    Miss Frederick appeared obviously offended by the 5th Event at Murphy.

85.    During the 5th Event, Miss Frederick said to Mr. Najera, "get off of me… would you get off…".

86.    During the 5th Event, Miss Frederick screamed at Mr. Najera, "there's fucking rats here!"

87.    During the 5th Event, Mr. Guerrero repeatedly laughed out-loud.

88.     During the 5th Event, Miss Frederick attempted to rise up, but Mr. Najera placed his right hand on the coat covering Miss Frederick's right breast, and Mr. Najera pushed Miss Frederick back down onto her back on the ground in the snow and rocks.

89.     During the 5th Event, while working for Murphy, Mr. Najera forced Miss Frederick down on the ground, on her back, in the snow and rocks, against her will, and he kept her there for several seconds, until she stopped trying to rise up.

90.     During the 5th Event, Mr. Najera stood directly over Miss Frederick staring at her while she lay on her back in the snow and rocks.

91.     During the 5th Event, while Miss Frederick lay on her back outdoors in the snow and rocks, Mr. Najera stood over her and pointed and wagged his finger at her face.

92.     During the 5th Event, while pointing and wagging his finger in Miss Frederick's face, Mr. Najera told Miss Frederick, "you're fucking talking back to your Foreman like that".

93.     During the 5th Event, Miss Frederick laid on the ground outdoors on her back in the snow and rocks for approximately 15 seconds.

94.     During or immediately following the 5th Event, Mr. Najera offered Miss Frederick his hand and she refused it.

95.     During or immediately following the 5th Event, Mr. Guerrero continued to laugh out loud and said, "he said call me Master".

96.     During or immediately following the 5th Event, Mr. Najera repeatedly kicked snow on Miss Frederick, while she was sitting in the snow and rocks.

97.     Following the 5th Event, Miss Frederick sat up, looked at Mr. Guerrero recording the video, and asked him, "are you recording this shit", and Miss Frederick then looked

at Mr. Najera and said, ""he's fucking recording this…".

98.    Miss Frederick appeared surprised when she apparently realized the 4th Event and 5th Event were being recorded, and she appeared obviously embarrassed.

## Complaints

99.    On Monday, December 12, 2016, while working at Murphy, Miss Frederick complained to Mr. Najera that his repeated behavior, touching her and "smacking [her] on the ass", was not going to be tolerated any longer, that his behavior toward her at Murphy was extremely disrespectful, and she was not his "play-thing" at Murphy just because she is a female.

100.    On December 12, 2016, while working at Murphy, Miss Frederick told Mr. Najera that he should treat her the same as any other Apprentice at Murphy.

101.    In response, at Murphy, on December 12, 2016, Mr. Najera increased his harassment and began retaliating against Miss Frederick at Murphy.

102.    On December 12, 2016, Sean Eckley, a Journeyman Plumber at Murphy, needed an anchor drilled into the ceiling at a Murphy worksite, and Miss Frederick drilled it.

103.    On this occasion, while working for Murphy, as Miss Frederick came down the ladder after drilling the anchor, in the presence of her co-workers at Murphy, Mr. Najera harshly chastised and verbally disciplined Miss Frederick for drilling the anchor.

104.    On this occasion, while working for Murphy, Mr. Najera harshly chastised and verbally disciplined Miss Frederick, stating that he had instructed her to "just stand there".

105.    In response, Miss Frederick explained to Mr. Najera that she was just taking a

little initiative, doing her job, and assisting another Journeyman Plumber while Mr.
Guerrero was in the restroom.

106.    In reply, Mr. Najera continued to verbally discipline and harshly chastise Miss
Frederick in the presence of her co-workers at Murphy, including but not limited to, Mr.
Najera telling Miss Frederick that if he directs her to stand there then she is to stand
there and do nothing else.

107.    Outside the presence of Mr. Najera, Mr. Guerrero and Sean Eckley told Miss
Frederick that she did nothing wrong by drilling the anchor while waiting for Mr.
Guerrero to return from the restroom, and in fact, she had acted properly.

108.    At 11:14 a.m. on Monday, December 12, 2016, Miss Frederick called Shelley
Chapman-McMahon in the Colorado "Manpower" department at Murphy.

109.    On December 12, 2016, Miss Frederick asked Ms. Chapman-McMahon to meet
with her in-person regarding a human resources ("HR") issue at Murphy, and Ms.
Chapman-McMahon agreed.

110.    On December 12, 2016, other than Ms. Chapman-McMahon, Murphy did not
have an HR representative or department in Colorado, to meet in-person with Miss
Frederick on that date.

111.    Other than Ms. Chapman-McMahon, Murphy never informed Miss Frederick of
any Murphy HR representative or department in Colorado.

112.    On Monday, December 12, 2016, beginning at approximately 11:45 a.m., in
Colorado, Miss Frederick personally met with Ms. Chapman-McMahon at Murphy (the
"HR Meeting").

113.    During the HR Meeting, Miss Frederick complained to Ms. Chapman-McMahon

that Mr. Najera was sexually harassing her at Murphy.

114.    During the HR Meeting, Miss Frederick complained to Ms. Chapman-McMahon that Mr. Najera was repeatedly assaulting her and humiliating her at Murphy.

115.    During the HR Meeting, Miss Frederick complained to Ms. Chapman-McMahon that Mr. Najera was repeatedly and forcefully slapping her on the buttocks at Murphy, without her consent or invitation.

116.    During the HR Meeting, Miss Frederick explained to Ms. Chapman-McMahon that she had complained to Mr. Najera at least twice personally but Mr. Najera was "not getting the message", as he was continuing to sexually harass her at Murphy following her repeated complaints to him.

117.    During the HR Meeting, Miss Frederick complained to Ms. Chapman-McMahon that Mr. Najera was retaliating against her at Murphy.

118.    During the HR Meeting, Miss Frederick informed Ms. Chapman-McMahon that Mr. Najera apparently had romantic feelings for her, but these feelings were not reciprocated by Miss Frederick.

119.    During the HR Meeting, Miss Frederick complained to Ms. Chapman-McMahon that as a direct result of her repeatedly denying Mr. Najera's sexual advances toward her at Murphy, Mr. Najera had "turned into a major asshole who can't keep his hands to himself" at work.

120.    In response to Miss Frederick's complaints during the HR Meeting, Ms. Chapman-McMahon made excuses for Mr. Najera's behavior toward Miss Frederick at Murphy.

121.    During the HR Meeting, in response to Miss Frederick's complaints, Ms.

Chapman-McMahon told Miss Frederick, "sometimes guys get stressed-out and it seems like a Foreman is a major asshole, but it's just because they have a lot on their plate."

122.   In response, during the HR Meeting, Miss Frederick told Ms. Chapman-McMahon that she had been working with Mr. Najera for approximately four months and she knows what he is like when he is just stressed-out, and Mr. Najera's sexual harassment of her at Murphy was not just stress.

123.   During the HR Meeting, Miss Frederick complained to Ms. Chapman-McMahon that Mr. Najera was "creating a hostile working environment" for her at Murphy.

124.   During the HR Meeting, Miss Frederick complained to Ms. Chapman-McMahon that Mr. Najera was not just stressed-out, but instead, he was "handsy" with her at Murphy.

125.   In response to Miss Frederick's complaints during the HR Meeting, Ms. Chapman-McMahon told Miss Frederick that her complaints are "hard to accept" because she knows Mr. Najera so well.

126.   In response, during the HR Meeting, Miss Frederick played the video for Ms. Chapman-McMahon.

127.   During the HR Meeting, after watching Mr. Najera forcefully slap Miss Frederick on her buttocks in the video, Ms. Chapman-McMahon said to Miss Frederick, "yeah, that is not okay."

128.   During the HR Meeting, after watching Mr. Najera forcefully slap Miss Frederick on her buttocks in the video, Ms. Chapman-McMahon made repeated excuses for Mr. Najera's conduct and behavior toward Miss Frederick at Murphy.

129.    During the HR Meeting, in response to Miss Frederick's complaints, Ms. Chapman-McMahon told Miss Frederick that it is "difficult for these guys" because they are not used to working with women, there is a lot of "horseplay" in the field, and sometimes they do not know when they are crossing the line.

130.    During the HR Meeting, in response to Miss Frederick's complaints and after watching Mr. Najera forcefully slap Miss Frederick on her buttocks in the video, Ms. Chapman-McMahon told Miss Frederick, "sometimes this just comes with the territory".

131.    In reply, during the HR Meeting, Miss Frederick told Ms. Chapman-McMahon, "let me stop you there … I've worked in male-dominated fields and never have I had someone cross the line like this … and you can't tell me that Mike (Najera) didn't know this was inappropriate."

132.    During the HR Meeting, Miss Frederick informed Ms. Chapman-McMahon that she did not want to work with Mr. Najera any longer and she wanted Murphy to protect her.

133.    In response, during the HR Meeting, Ms. Chapman-McMahon told Miss Frederick, "I will try to move you, but it's not going to be overnight.  There's lots of people on jobsites that are already set where they're supposed to be.  I'll look for a place for you.  Do you want to take a layoff?"

134.    Miss Frederick replied to Ms. Chapman-McMahon, "no, to take a layoff is to be punished for something I did not do.  I want you to move me.  Murphy has other First-Year Apprentices working for you."

135.    During the HR Meeting, Ms. Chapman-McMahon told Miss Frederick, "if Ed Becker gets ahold of this video, Mike (Najera) will definitely lose his job."

136.   Miss Frederick responded to Ms. Chapman-McMahon that her intent was not for Mr. Najera to lose his job.

137.   Near the end of the HR Meeting, in response to Miss Frederick's complaints, Ms. Chapman-McMahon told Miss Frederick, "well you are up against a hard one here."

138.   In reply, Miss Frederick told Ms. Chapman-McMahon, "I just want to get out of a hostile working environment."

139.   Following the HR Meeting, Miss Frederick did not return to the Murphy worksite for the remainder of that day.

140.   In the afternoon of December 12, 2016, Ms. Chapman-McMahon called Miss Frederick and told her that she is to be assigned to a different Foreman Plumber supervisor at Murphy, Gary Mauraucher, in Boulder, Colorado, and Miss Frederick would work with him at Astra-Zeneca for the remainder of that week.

141.   No reasonable investigation of Miss Frederick's complaints to Ms. Chapman-McMahon during the HR Meeting was conducted by Murphy or its agents in December 2016 or January 2017.

142.   Mr. Najera's employment was not terminated at Murphy related to the video, the HR Meeting, or Miss Frederick's complaints to Murphy about Mr. Najera.

143.   Mr. Najera's employment at Murphy was not terminated in December 2016 or January 2017.

## Termination

144.   On Friday, December 16, 2016, Ms. Chapman-McMahon called Miss Frederick and directed her to report for work at the Fab Shop the following Monday, December 19, 2016.

19

145.   On Monday, December 19, 2016, Miss Frederick reported for work at Murphy's Fab Shop.

146.   From December 19, 2016 through January 20, 2017, Miss Frederick was assigned by Murphy to work under the direct supervision of Murphy's Plumber Foreman, Jeramiah Anderson.

147.   Jeramiah Anderson is an adult male.

148.   From December 19, 2016 through the date of Miss Frederick's termination at Murphy, Murphy provided Jeramiah Anderson with supervisory or managerial authority over Miss Frederick, to fire or discipline her as necessary at Murphy.

149.   From December 19, 2016 through the date of Miss Frederick's termination at Murphy, Murphy provided Jeramiah Anderson with supervisory or managerial authority to participate in or recommend discipline for Miss Frederick or her termination at Murphy.

150.   From December 19, 2016 to January 20, 2017, while Miss Frederick was working for Murphy, Miss Frederick personally encountered Mr. Najera at the Fab Shop approximately six (6) times.

151.   On several of the occasions when Miss Frederick personally encountered Mr. Najera at the Fab Shop between December 19, 2016 and January 20, 2017, Mr. Najera approached Miss Frederick and spoke to her, and on every such occasion Miss Frederick refused to speak with Mr. Najera.

152.   Thirty-nine (39) days after Miss Frederick complained to Murphy about Mr. Najera during the HR Meeting, Murphy involuntarily terminated Miss Frederick's employment at Murphy.

153.    On Friday, January 20, 2017, at the Fab Shop, Jeramiah Anderson informed Miss Frederick that her employment at Murphy was immediately terminated.

154.    Jeramiah Anderson informed Miss Frederick that the termination of her employment at Murphy was a "layoff".

155.    When he terminated her employment at Murphy, Jeramiah Anderson told Miss Frederick that her termination was "not personal".

156.    When he terminated her employment at Murphy, Jeramiah Anderson told Miss Frederick that she had been an "excellent" Apprentice, he admired her motivation, and he usually did not have to tell an Apprentice to slow down.

157.    As Miss Frederick was leaving the Fab Shop following her termination at Murphy, Eric Jackson ("Mr. Jackson"), a Murphy Foreman, told Miss Frederick that he hoped Murphy would re-hire her later.

158.    As Miss Frederick was leaving the Fab Shop following her termination at Murphy, Mr. Jackson told Miss Frederick that she was a "better employee" than Drew Bynum ("Mr. Bynum").

159.    Mr. Bynum was a First Year Apprentice Plumber at Murphy when Miss Frederick was employed at Murphy.

160.    Mr. Bynum remained employed as a First Year Plumber Apprentice at Murphy after Miss Frederick's employment at Murphy was terminated.

161.    As Miss Frederick was leaving the Fab Shop following her termination at Murphy, Mr. Jackson told Miss Frederick that he did not know why Murphy was keeping Mr. Bynum employed while Murphy was terminating her employment.

162.    The Superintendent of the Fab Shop, Jason Anderson, expressed his preference

to keep Miss Frederick employed at Murphy, rather than keeping Mr. Bynum employed at Murphy.

163.    The Superintendent of the Fab Shop, Jason Anderson, said he was given "no choice" but to terminate Miss Frederick's employment at Murphy.

164.    At the time of Miss Frederick's termination at Murphy, Mr. Bynum had less seniority or time working at Murphy than Miss Frederick.

165.    At the time of Miss Frederick's termination at Murphy, Mr. Bynum was less qualified than Miss Frederick for the position of First Year Apprentice Plumber at Murphy.

166.    At the time of Miss Frederick's termination at Murphy, Mr. Bynum had less experience as a First Year Apprentice Plumber than Miss Frederick.

167.    At the time of Miss Frederick's termination at Murphy, Mr. Bynum had worse objective behavior at Murphy than Miss Frederick.

168.    At the time of Miss Frederick's termination at Murphy, Mr. Bynum had worse objective performance at Murphy than Miss Frederick.

169.    At the time of Miss Frederick's termination at Murphy, Miss Frederick was tied for the top-rank in her class at the Union, and Mr. Bynum was ranked below Miss Frederick in their class at the Union.

170.    Adverse employment actions against Miss Frederick by Murphy complained of herein constitute a continuing violation, since at least the end of October 2016, of Miss Frederick's rights and privileges under Title VII.

171.    Murphy engaged in discrimination against Miss Frederick on the basis of sex/gender in decisions regarding the maintenance of an unlawfully hostile working

environment, and also in the terms and conditions of her employment (termination), and

Murphy retaliated against Miss Frederick by unlawfully discharging her following her

opposition to unlawful discrimination and participation in activities protected by Title VII.

172.   Murphy intended to unlawfully discriminate against Miss Frederick in her

termination based upon her sex/gender, intended to retaliate against Miss Frederick in

her discharge from employment, and Murphy's appointed supervisor intended to

sexually harass Miss Frederick, repeatedly assault and batter her, and falsely imprison

her while working at Murphy.

173.   As a direct and proximate result of Murphy's unlawful employment practices

complained of herein, Miss Frederick has suffered, and in the future will continue to

suffer, back pay and fringe benefit losses, front pay and benefit losses, out-of-pocket

pecuniary losses, lost future earnings capacity, mental suffering, emotional distress,

loss of enjoyment of life, humiliation, loss of reputation, intimidation and inconvenience,

and other compensable, non-economic injuries to be proven at trial.

174.   Miss Frederick is entitled to all of her costs and damages from Murphy.

## **FIRST CLAIM FOR RELIEF**

### **[Assault - 4th Event]**

175.   Plaintiff incorporates herein paragraphs 1-174 above, as if fully set forth herein.

176.   During the 4th Event, Mr. Najera was an employee of Murphy and was acting in

the course and scope of his employment with Murphy.

177.   Related to the 4th Event, Mr. Najera specifically targeted Plaintiff for assault, for

which Plaintiff is entitled to recover damages against Murphy for all the natural and

probable consequences of such tortious conduct.

178.    Related to the 4th Event, Mr. Najera intended to cause a physical contact with the Plaintiff, or intended to place the Plaintiff in apprehension of such contact.

179.    Related to the 4th Event, Mr. Najera placed the Plaintiff in apprehension of immediate physical contact.

180.    Related to the 4th Event, such contact was or appeared to be harmful or offensive.

181.    Miss Frederick is entitled to all of her resulting costs and damages from Murphy.

## SECOND CLAIM FOR RELIEF

### [Assault – 5th Event]

182.    Plaintiff incorporates herein paragraphs 1-181 above, as if fully set forth herein.

183.    During the 5th Event, Mr. Najera was an employee of Murphy and was acting in the course and scope of his employment with Murphy.

184.    Related to the 5th Event, Mr. Najera specifically targeted Plaintiff for assault, for which Plaintiff is entitled to recover damages against Murphy for all the natural and probable consequences of such tortious conduct.

185.    Related to the 5th Event, Mr. Najera intended to cause a physical contact with the Plaintiff, or intended to place the Plaintiff in apprehension of such contact.

186.    Related to the 5th Event, Mr. Najera placed the Plaintiff in apprehension of immediate physical contact.

187.    Related to the 5th Event, such contact was or appeared to be harmful or offensive.

188.    Miss Frederick is entitled to all of her resulting costs and damages from Murphy.

## THIRD CLAIM FOR RELIEF

### [Battery – 4th Event]

189.   Plaintiff incorporates herein paragraphs 1-188 above, as if fully set forth herein.

190.   During the 4th Event, Mr. Najera was an employee of Murphy and was acting in the course and scope of his employment with Murphy.

191.   Related to the 4th Event, Mr. Najera specifically targeted Plaintiff for battery, for which Plaintiff is entitled to recover damages against Murphy for all the natural and probable consequences of such tortious conduct.

192.   Related to the 4th Event, Mr. Najera intended to make physical contact with the Plaintiff, or knew that such contact would probably result.

193.   Mr. Najera's actions related to the 4th Event resulted in physical contact with the Plaintiff.

194.   Related to the 4th Event, such contact was harmful or offensive.

195.   Miss Frederick is entitled to all of her resulting costs and damages from Murphy.

## FOURTH CLAIM FOR RELIEF

### [Battery – 5th Event]

196.   Plaintiff incorporates herein paragraphs 1-195 above, as if fully set forth herein.

197.   During the 5th Event, Mr. Najera was an employee of Murphy and was acting in the course and scope of his employment with Murphy.

198.   Related to the 5th Event, Mr. Najera specifically targeted Plaintiff for battery, for which Plaintiff is entitled to recover damages against Murphy for all the natural and probable consequences of such tortious conduct.

199.   Related to the 5th Event, Mr. Najera intended to make physical contact with the

Plaintiff, or knew that such contact would probably result.

200.   Mr. Najera's actions related to the 5th Event resulted in physical contact with the

Plaintiff.

201.   Related to the 5th Event, such contact was harmful or offensive.

202.   Miss Frederick is entitled to all of her resulting costs and damages from Murphy.

## FIFTH CLAIM FOR RELIEF

## [False Imprisonment - 5th Event]

203.   Plaintiff incorporates herein paragraphs 1-202 above, as if fully set forth herein.

204.   During and following the 5th Event, Mr. Najera was an employee of Murphy and

was acting in the course and scope of his employment with Murphy.

205.   During the 5th Event, Mr. Najera specifically targeted Plaintiff for False

Imprisonment, for which Plaintiff is entitled to recover damages against Murphy for all

the natural and probable consequences of such tortious conduct.

206.   During the 5th Event, Mr. Najera intended to restrict the Plaintiff's freedom of

movement.

207.   During the 5th Event, Mr. Najera either directly or indirectly restricted the

Plaintiff's freedom of movement for a period of time, no matter how short.

208.   During the 5th Event, the Plaintiff was aware that her freedom of movement was

restricted.

209.   Miss Frederick is entitled to all of her resulting costs and damages from Murphy.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff, Hannah Frederick, respectfully prays that this Court enter judgment in her favor and against the Defendant, MURPHY COMPANY MECHANICAL CONTRACTORS AND ENGINEERS, and that the Court order the following relief to the Plaintiff against the Defendant:

A.   Award past and future non-economic damages for all claims as allowed by law, in an amount to be determined at trial, including, but not limited to, mental suffering, emotional distress, loss of enjoyment of life, humiliation, loss of reputation, intimidation, and inconvenience;

B.   Costs of this action, including expert witness fees, as allowed by law;

C.   Pre-judgment and post-judgment interest as allowed by law;

D.   Equitable relief, including, without limitation: (a) ordering Defendant to apologize to Plaintiff verbally and publicly, and in writing, for its torts committed against her; and, (b) ordering the posting of this Court's Judgment and Order in this action in a conspicuous location at all of Defendant's facilities located within the State of Colorado; and,

E.   Any other appropriate relief necessary to make the Plaintiff whole and compensate her for the tortious violations described above, and any further legal and/or equitable relief, including policy revision, implementation, and monitoring, and training and education for Defendant's employees, managers, and executives, as deemed appropriate by the Court and authorized by law.

## **PLAINTIFF HEREBY DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

DATED this 7th day of December 2017.

Respectfully submitted,

***s/ Sean M. McCurdy***
Sean M. McCurdy

DATE FILED: December 7, 2017 8:44 AM
FILING ID: 41969B8F72706
CASE NUMBER: 2017CV34531

Plaintiff's Exhibit "1" is filed conventionally.